***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to receive additional evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Pfeiffer.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated as above, and there is no question as to misjoinder or nonjoinder of the parties.
4. An employment relationship existed between the parties on May 3, 2000.
5. Plaintiff alleges she suffered a compensable injury by accident or occupational disease to her left shoulder arising out of and in the course of her employment on May 3, 2000, and defendant has timely denied liability for this alleged injury/occupational disease.
6. The employer is self insured for workers' compensation purposes.
7. Plaintiff's average weekly wage was $312.00, which results in a compensation rate of $208.00.
8. Plaintiff was out of work from May 4, 2000, to September 16, 2000, as a result of her alleged shoulder injury/occupational disease, at which time she returned to work at wages equal to or greater than her pre-injury average weekly wage.
9. Plaintiff was paid short-term disability benefits from May 4, 2000, through September 16, 2000, in the total amount of $2,810.00 from an employer sponsored, non-contributory plan. Defendant would be entitled to a credit should plaintiff's claim be found compensable.
10. The parties have stipulated into evidence the following:
a. Videotape of the mirror trimmer job;
b. Personnel file jacket; and,
c. Plaintiff's request for leave of absence.
10. The issues to be determined are whether plaintiff sustained a compensable injury by accident or contracted a compensable occupational disease to her left shoulder on or about May 3, 2000, and if so, to what medical and indemnity benefits is plaintiff entitled.
 ***********
Based upon all of the competence evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner in this matter, plaintiff was fifty-eight (58) years old. Plaintiff dropped out of school before completing the seventh grade, and plaintiff does not have a GED or any advanced degrees or special certifications. Since 1978, plaintiff has worked for Perdue Farms at a variety of jobs and was working at the liver table, removing livers from chickens on the date of the hearing before the Deputy Commissioner. Plaintiff suffers from diabetes and other health and medical conditions, which include heart problems and renal insufficiency.
2. For several years prior to the injury giving rise to this claim, plaintiff was employed by defendant in a mirror trimmer job. This position involved inspecting poultry and cutting off bad portions of each bird. Plaintiff was able to sit or stand as necessary in this job.
3. The mirror trimmer job required plaintiff to remove the birds from the line and place or hang them on a rack to her left. Plaintiff would then inspect each bird and cut off damaged or bad portions of each bird. Plaintiff, who is right-hand dominant, cut off damaged portions with her right hand. However, she used both arms to move and hang the birds, as well as to inspect each one. Plaintiff frequently held her arms outstretched above shoulder level when performing this job, particularly when she was seated while working. The video evidence and examination of plaintiff notwithstanding, the Full Commission finds that this job required frequent raising of her arms above the shoulder as noted in the company doctor's medical note of May 12, 1999, contained at page 199 of the exhibits.
4. On May 19, 1998, plaintiff presented to the Perdue Wellness Center where she complained of pain in her left arm, shoulder, and neck that she attributed to working. Plaintiff was diagnosed with left shoulder tendonitis, and was treated with medication and physical therapy.
5. In October 1999, the company doctor, Dr. Bruce I. Tetalman, ordered an MRI due to plaintiff's persistent complaints. The MRI revealed arthritic changes and a full thickness rotator cuff tear of plaintiff's left shoulder.
6. The medical notes consistently report that plaintiff attributed her left shoulder problems to working; however, defendant's physicians reported plaintiff's problems as not work-related but instead as arthritis. At times, plaintiff's work was restricted by her doctors. On April 10, 2000, despite the rotator cuff tear and plaintiff's persistent complaints, plaintiff was continued at full-duty work; however, her job was changed at some point to the liver table, where she did not have to work at shoulder level. As of that April appointment, the physician did refer plaintiff for an orthopaedic evaluation due to the failure of conservative treatment.
7. On May 3, 2000, plaintiff was seen by Dr. Edwin C. Bartlett at Orthopaedic East. Dr. Bartlett ordered a subacromial injection and wrote plaintiff out of work altogether for one week. On May 11, 2000, plaintiff was again taken out of work.
8. Conservative treatment continued to prove unsuccessful, so Dr. Bartlett referred plaintiff to Dr. Lassiter for a surgical consultation. A second opinion evaluation on June 22, 2000, by Dr. Bloem confirmed the diagnosis of left rotator cuff tear and agreed that surgery was indicated. Dr. Lassiter ultimately performed an arthroscopy, subacromial decompression, and rotator cuff tear repair to plaintiff's left shoulder on June 27, 2000.
9. Plaintiff received good results from the surgical repair, and was able to return to work for defendant at the liver table on September 16, 2000. The surgical repair after years of unsuccessful conservative treatment was reasonably necessary to effectuate a cure, give relief, and to lessen the period of plaintiff's disability as a result of the rotator cuff tear.
10. Plaintiff has been assigned a 15% permanent partial impairment rating by Dr. Lassiter for her left shoulder/arm injury and resulting surgical repair.
11. Plaintiff, being a diabetic, was medically predisposed to suffering from shoulder injuries due to working at or above shoulder level. However, a defendant must take a plaintiff as she is.
12. Dr. Lassiter testified, in an opinion that is accepted herein as credible, that plaintiff's job as a mirror trimmer placed her at an increased risk for developing shoulder problems as compared to members of the general public not so employed, as she frequently had to work with both arms at or above shoulder level, particularly when she sat while performing her job. Furthermore, according to Dr. Lassiter, and in testimony deemed credible and accepted herein, plaintiff's job as a mirror trimmer could have caused the left rotator cuff to tear, and the job probably aggravated plaintiff's preexisting arthritis.
13. While there is testimony from an ergonomist that plaintiff's job as a mirror trimmer for defendant does not place employees at an increased risk of developing shoulder injuries, the Full Commission, in its discretion, has chosen to assign more weight and credibility to the medical evidence and testimony of the doctors as well as to plaintiff's testimony that her job required her to work frequently at shoulder level. Accordingly, the Full Commission hereby finds that plaintiff's job as a mirror trimmer for defendant placed her at an increased risk of developing a rotator cuff tear as compared to members of the general public. And taking into account plaintiff's medical predisposition when performing shoulder-level work, plaintiff's job was the likely cause of the rotator cuff tear.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Because defendant must take plaintiff as it finds her, despite any medical predisposition to injury, and based upon the performance of her job as a mirror trimmer that required her to frequently use both arms at shoulder level and, thus, placed her at an increased risk of developing a rotator cuff tear as compared to members of the general public, plaintiff contracted a compensable occupational disease that rendered her disabled after May 3, 2000. N.C. Gen. Stat. § 97-53(13); Rutledge v. TultexCorp., 308 N.C. 85, 301 S.E.2d 359 (1983).
2. As a result of the compensable occupational disease to her left arm, plaintiff was temporarily totally disabled from May 4, 2000, through September 16, 2000. N.C. Gen. Stat. §§ 97-2(9) and 97-29.
3. Plaintiff is entitled to receive thirty-six (36) weeks of permanent partial disability benefits at the weekly rate of $208.00 for her 15% permanent partial impairment to her left arm. N.C. Gen. Stat. §97-31(13).
4. Plaintiff is entitled to have defendant provide all related medical treatment that was reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Defendant is entitled to a credit of $2,810.00 for the short-term disability benefits paid to plaintiff during her period of disability. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved herein and the credit owed defendant, defendant shall pay to plaintiff temporary total disability compensation benefits at the weekly rate of $208.00 for the period of time from May 4, 2000, through September 16, 2000. Such compensation has accrued and shall be paid in a lump sum. Interest shall be paid at 8% per annum from July 24, 2001 on any amount not subject to the credit.
2. Subject to the attorney's fee approved below, defendant shall compensate plaintiff for her 15% permanent partial impairment to her left arm by paying thirty-six (36) weeks of benefits at the weekly rate of $208.00.
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of twenty-five (25%) of the total amount awarded to plaintiff in paragraphs 1 and 2 above. Defendant shall deduct twenty-five (25%) of the total amount awarded to plaintiff and pay this amount directly to plaintiff's counsel.
4. Defendant shall provide all medical compensation for plaintiff as a result of her compensable left shoulder condition.
5. Defendant shall bear the costs of this proceeding.
This 26th day of September 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER